UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **DAYLE L. OSBORNE** | * | **CIVIL ACTION NO. 16-1566** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **NANCY W. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Dayle Osborne protectively filed the instant applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits on October 15 and December 10, 2010, respectively. (Tr. 17, 183-192, 200). She alleged disability as of September 15, 2006,[1] because of schizoaffective disorder; post-traumatic stress disorder ("PTSD"); status-post right ankle fracture; bulimia; and tendonitis. (Tr. 204-205). The state agency denied the

---

[1] Osborne apparently filed prior applications for Title II benefits on January 27, 2009, and April 8, 2010. *See* Tr. 68, 200. The January 27, 2009, application ultimately was denied by an Administrative Law Judge on February 17, 2010, and not further appealed. (Tr. 68, 200). Instead, she filed a new claim on April 8, 2010, which was denied at the state agency level on August 27, 2010. (Tr. 68). Apparently in lieu of a request for hearing on the denial of her April 8, application, Osborne filed the instant applications.

claims at the initial stage of the administrative process. (Tr. 66-89, 91-94, 295-305). Thereafter, Osborne requested and received an August 18, 2011, hearing before an Administrative Law Judge ("ALJ"). (Tr. 34-65). In an October 28, 2011, written decision, however, the ALJ determined that Osborne was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 14-25).

Osborne unsuccessfully sought review before the Appeals Council, before filing suit in this court on February 26, 2013. (Tr. 1-3); *Osborne v. Commissioner, Social Security Administration*, No. 13-0415 (W.D. La.). Pursuant to a March 13 and April 1, 2014, Report and Recommendation and Judgment, the District Court reversed and remanded the matter for further proceedings consistent therewith. (Tr. 457-473). Upon remand from the District Court, the Appeals Council vacated the prior administrative decision and remanded the matter to an ALJ for further proceedings. (Tr. 453-455).

Upon remand, a new hearing was held on October 22, 2015, before a different ALJ. (Tr. 385-429). In an April 22, 2016, partially favorable decision, the ALJ found that the claimant was disabled as of her (modified) alleged onset date of February 18, 2010, but that the disability extended only through June 2, 2015, because, effective June 3, 2015, she experienced medical improvement related to her ability to work. (Tr. 353-375).

Osborne appealed the adverse decision to the Appeals Council. On September 2, 2016, however, the Appeals Council denied Osborne's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 346-349).

On November 8, 2016, Osborne sought review before this court. She alleges the following errors:

2

I. The ALJ's finding that, beginning June 3, 2015, Ms. Osborne retained the RFC to perform sedentary work with the same nonexertional limitations found for the period from February 18, 2010 through June 2, 2015 when she was found disabled, with the exception that she would no longer be off task at least 25% of the time due to mental symptoms and the side effects of medications, is not supported by the opinion of any physicians of record and, as such, cannot be based on substantial evidence.

II. For the period beginning June 3, 2015, the ALJ committed reversible error in failing to provide specific reasons for her credibility finding in failing to consider the regulatory factors as required.

III. The Commissioner failed to sustain her burden of establishing that there is other work in the national economy that Ms. Osborne could perform beginning June 3, 2015.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

>   (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The Disability Benefits Reform Act of 1984 amended the Social Security Act to provide a standard of review for determining whether a disability has ceased. Pub.L. 98-460. The Commissioner has prescribed regulations to implement the standard of review. However, a disability recipient's benefits "may be terminated only if substantial evidence demonstrates *both* that 'there has been any medical improvement' *and* that 'the individual is now able to engage in substantial gainful activity.'" *Hallaron v. Colvin*, 578 F. App'x 350, 353 (5th Cir. 2014) (citing 42 U.S.C. § 1382c(a)(4)(A)).

The Commissioner has prescribed regulations to implement the foregoing requirement. Specifically, a disability recipient's benefits will be terminated only where the Commissioner determines:

>   a)   that there has been medical improvement in the individual's impairment or combination of impairments that is related to the individual's ability to

        work;[2]

  b)    or that one or more exceptions to medical improvement applies; and

  c)    in addition to a) or b), that the individual is currently able to engage in substantial gainful activity.

20 C.F.R. § 404.1594(a) (paraphrased).

In evaluating the above-enumerated issues, the Commissioner employs an eight-step sequential analysis:

1. Whether the individual is engaged in substantial gainful activity? (if so, the Commissioner will find that disability has ended).

2. Whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so, disability will be found to continue).

3. If not, has there been medical improvement? (If so, step 4 is considered; if not, go to step 5).

4. If there has been medical improvement, is it related to the individual's ability to perform work? (If not, go to step 5; if so, go to step 6).

5. If there was no medical improvement at step 3 or the medical improvement was not related to the individual's ability to work at step 4, does an exception apply? (If not, disability continues; if one of the first exceptions to medical improvement applies, then go to step 6; if an exception from the second group of exceptions to medical improvement applies, then disability has ended).

6. If there has been medical improvement related to the individual's ability to do work or if one of the first group of exceptions to medical improvement applies, are the individual's current impairments in combination severe? (If not, disability has ended).

7. If the impairments are severe, is the individual able to engage in

---

[2] The regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] or continued to be disabled." 20 C.F.R. § 404.1594(b)(1).

>      past relevant work?  (If so, disability has ended).
>
> 8.   If unable to perform past relevant work, is the individual capable of performing other work, given vocational consideration and residual functional capacity? (If so, disability has ended; if not, disability continues).

20 C.F.R. § 404.1594(f) (paraphrased).

The review may cease and benefits may be continued at any point in the analysis that the Commissioner determines that there is sufficient evidence to find that the individual is still unable to engage in substantial gainful activity. *Id*.

In a continuing disability review applying the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citations omitted).

## The ALJ's Decision

**I.   For the Period from February 18, 2010 through June 2, 2015**

   a)   Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 361). At step two, she found that the claimant suffered severe impairments of psychosis NOS; post-traumatic stress disorder (PTSD); schizotypal personality disorder; schizoaffective disorder; bipolar disorder; cluster B traits; status post-right ankle fracture; and right arm tendonitis. (Tr. 361).[3] The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the

---

[3] She further found that the claimant's complaints of frequent headaches were non-severe. *Id*.

process. (Tr. 361-362).

    b)    <u>Residual Functional Capacity</u>

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform sedentary work,[4] reduced by the need to use a cane; no more than frequent handling and fingering with the dominant right upper extremity; no overhead reaching with right upper extremity; limited to unskilled work activity (i.e., the ability to perform no more than simple routine tasks involving simple short instructions, simple work-related decisions, and few workplace changes); no more than occasional superficial interaction with coworkers and the public; no teamwork; and the need to be off task at least 25% of the workday due to mental symptoms and the side effects of medication. (Tr. 362-368).

    c)    <u>Steps Four and Five</u>

The ALJ concluded at step four of the sequential evaluation process that the claimant was unable to perform her past relevant work. (Tr. 369). Accordingly, she proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education, and the ability to communicate in English. *Id*. She had no transferrable skills. *Id*.

The ALJ then observed that given the claimant's vocational factors, and if she had an

---

[4] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 201.28 and 201.21, Table 1, Appendix 2, Subpart P, Regulations No. 4. (Tr. 369). However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent the additional limitations eroded the occupational base for sedentary work. (Tr. 369-370). In response, the VE testified that given all these factors, there were *no* jobs in the national economy that the claimant could perform. (Tr. 370). As a result, the ALJ concluded that the claimant was disabled from February 18, 2010, through June 2, 2015.

## II.   For the Period Beginning on June 3, 2015

The ALJ determined that the claimant did not develop any new impairments; thus her severe impairments remained the same as the prior period. (Tr. 370). Furthermore, her impairments still did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id*.

The ALJ determined that the claimant experienced medical improvement as of June 3, 2015, and that the improvement was related to her ability to perform work because her residual functional capacity ("RFC") had increased. (Tr. 370-371). The ALJ next determined that, as of June 3, 2015, the claimant had the same RFC as for the prior closed period of disability, except that she no longer was off task at least 25% of the day. (Tr. 371-373).

The ALJ concluded that the claimant was unable to return to past relevant work. (Tr. 373). Finally, the ALJ determined that the claimant was a younger individual, with at least a high school education, and the ability to communicate in English. (Tr. 373-374). Transferability of skills was not an issue. *Id*. The ALJ then observed that, given the claimant's vocational

factors, and the ability to perform the full range of sedentary work, the Medical-Vocational Guidelines directed a finding of not disabled as of June 3, 2015. 20 C.F.R. § 404.1569; Rules 201.21, Table 1, Appendix 2, Subpart P, Regulations No. 4. *Id*.

However, because the claimant's RFC *did* include nonexertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her limitations eroded the occupational base for unskilled work at the sedentary exertional level. *Id*. In response, the VE identified the representative jobs of polisher; flip loading machine feeder; and bench hand that were consistent with the claimant's RFC and vocational profile. *Id*.[5]

Therefore, the ALJ concluded that the claimant's disability ended as of June 3, 2015. (Tr. 374).

## Analysis

Plaintiff argues that the ALJ's RFC, for the time period beginning on June 3, 2015, is not supported by any medical source statement, any adequate or specific medical evidence, or a function-by-function analysis. The court agrees that, frequently, when no medical provider has issued an opinion or medical source statement regarding the effects of a claimant's impairments, the omission requires reversal and remand. However, the absence of a medical source statement, "does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see also Joseph-Jack v. Barnhart*, 80 Fed. Appx. 317, 318 (5th Cir.2003). Rather, in such

---

[5] The VE testified that for the polisher job, there were 70,000 positions available nationwide and 350 in Louisiana. The VE added that for the clip loading machine feeder job there were 104,000 positions nationwide and 1,020 in Louisiana. Finally, for the bench hand job, there were 217,000 positions nationally, and 7,190 in Louisiana. (Tr. 424). This incidence of jobs constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

situations, the court's inquiry properly "focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley, supra*.

At the outset, the court observes that, at least for the period until March 2013, the ALJ's RFC is substantially supported by the attorney-supplied medical statement form concerning schizophrenia that Dr. Zentner completed on February 2, 2012. (Tr. 325-326).[6] Indeed, the ALJ accorded it significant weight. (Tr. 364-365).

After plaintiff's last hospitalization in February 2013, her condition began to change materially. On May 20, 2013, Osborne was seen by Robert Detrinis, M.D. (Tr. 763). He noted that she did not take the session seriously. *Id*. Nonetheless, her memory was intact; attention and concentration were fair to good. *Id*. By this time, Osborne's diagnosis had changed from schizoaffective disorder to bipolar disorder II. *Id*.

Osborne returned to Dr. Detrinis on August 12, 2013. (Tr. 764). She had no evidence of schizophrenic symptoms. *Id*. Her memory was intact with average IQ. *Id*. Her judgment and insight were fair; attention and concentration were good. *Id*. He increased her Risperdal dosage. *Id*.

On September 16, 2013, Osborne reported to Dr. Detrinis that she was feeling better, her sleep had improved, with no complaints, and no side effects. (Tr. 762). However, she was not working, and instead awaiting disability. *Id*. Detrinis opined that her mental status examination

---

[6] Zentner indicated, *inter alia*, that Osborne was markedly limited in her ability: 1) to understand and remember detailed instructions; 2) to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and lengths of breaks; and 3) to interact appropriately with the general public. *Id*. He further recognized that a number of other functions were moderately limited. *Id*.

was grossly intact. *Id*.

On November 4, 2013, Osborne reported to Dr. Detrinis that her moods were okay, she had no side effects, and was enjoying life. (Tr. 761). She was smiling, and exhibited clear, organized thoughts, with no mania, or depression. *Id*.

Osborne returned to Dr. Detrinis again on May 23, 2014. (Tr. 760). At that time, she was feeling much better, her sleep had improved, with no side effects, and no complaints. *Id*. Her attention and concentration were good. *Id*. She was stable with Risperdal, with no side effects. *Id*. Detrinis opined that Osborne had "improved." *Id*.

On January 6, 2015, Osborne was seen by Erin Stanton, M.D. (Tr. 758-759). Osborne reported that she was doing fine and engaging in "just the normal things of life." *Id*. Her mood had been "pretty good." *Id*. She was calmer on her medication, and felt rested during the day. *Id*. She denied any side effects. *Id*. She had not felt down in a while – since she was hospitalized in early 2013. *Id*. Overall, she felt that she was doing a lot better "as long as she t[ook] [her] medicine." *Id*. Her short-term memory was grossly normal. *Id*. She was doing quite well, without mood or psychotic symptoms. *Id*.

On June 3, 2015, Osborne returned to Dr. Detrinis, who reviewed her progress notes dating back to 2012. (Tr. 848). Detrinis acknowledged that Osborne was applying for disability, but opined that she was capable of some form of work. *Id*. Upon examination, Osborne appeared slightly disheveled, but cooperative, oriented in all spheres, with good concentration, intact memory, and good judgment and insight. *Id*. He indicated that Osborne had bipolar disorder II, in full remission. *Id*. Detrinis also remarked that Osborne had been psychiatrically stable for awhile. *Id*. He tried to help her process the fact that she should be working, but

conceded that her opinion might be contrary to his own. *Id*.

At the October 2015, hearing held in this matter, Osborne testified that her medication helped her, and that she did not experience any side effects. (Tr. 395).[7] She also testified that she could stand for about five minutes without assistance, and walk for about seven minutes. (Tr. 396-397). She could sit for less than two hours at a time. *Id*. She also could lift a gallon of milk. (Tr. 397). She attends church every other day for Bible classes. (Tr. 403-404). She typically arrives at church a little after 10:00. *Id*. After church, she will go out with fellow parishioners, and talk with them. *Id*. She will then go home, fix a sandwich, and sit down and watch television. *Id*.

Osborne's mother agreed that the new medication had helped her daughter a lot. (Tr. 417). Moreover, she got along well with people at times. (Tr. 418). When asked what would prevent her daughter from returning to work on a regular basis, Osborne's mother replied that it was because her medication made her too drowsy. (Tr. 418-419).

The court finds that the hearing testimony provides substantial evidence to support the ALJ's RFC. Despite the longstanding nature of plaintiff's physical impairments, she did not indicate any physical limitation of functioning when she applied for disability in 2010. *See* Tr. 217. Moreover, she admitted that she could sit for "less than two hours," which is not necessarily inconsistent with the approximate two hour sitting intervals required for sedentary work. *See* POLICY INTERPRETATION RULING TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL

---

[7] After a follow-up leading question by her attorney, Osborne acknowledged that her medication made her feel drowsy. (Tr. 395-396).

RANGE OF SEDENTARY WORK, Social Security Ruling No. 96-9p.  She also could lift a gallon of milk.  The ALJ's RFC also contemplated that Osborne's ability to ambulate was reduced by the need to use a cane, with no more than frequent handling and fingering with the dominant right upper extremity, and no overhead reaching with right upper extremity.  In addition, plaintiff conceded that her arm and ankle pain was alleviated by Tylenol, which confirms that the pain was not intractable or debilitating.  (Tr. 400).

The court further finds that the ALJ's mental RFC that limited plaintiff to simple, unskilled work activity, with additional social interaction limitations, is more than supported by Dr. Detrinis's treatment notes and plaintiff's regular, continuing activities.  Indeed, by June 2015, plaintiff's bipolar disorder was in sustained remission.

Plaintiff argues that the record does not support the ALJ's implicit and necessary finding that she could perform work activities for a full work week on a sustained basis.  Importantly, however, the ALJ determined that plaintiff did not achieve material medical improvement until June 2015 – despite the fact that she had been doing well ever since her last hospitalization and medication change prior to March 2013.  In other words, the ALJ preserved plaintiff's disability status for over two years after the record supported improvement in her condition.  During this two year period, there was no evidence of deterioration, relapses, or the like.  Clearly, by June 2013, plaintiff's condition had stabilized.  In addition, there is no indication that her condition waxed or waned.  In fact, plaintiff regularly attended Bible study sessions every other day, where she interacted with others.  Attending classes regularly evidences some ability to maintain concentration for new and challenging tasks.  Under these circumstances, the court discerns no

cognizable error.[8]

Plaintiff also faults the ALJ for purporting to assign "great evidentiary weight" to plaintiff's Global Assessment of Functioning ("GAF") scores,[9] but then ignored regular GAF scores of 40 for the period after she experienced medical improvement. However, from what the court may discern, the low GAF scores referenced by plaintiff were documented by nurse Brenda Ricks. *See e.g.*, Tr. 841-846. Nonetheless, it is apparent that nurse Ricks simply carried over this GAF score from plaintiff's chart prior to the relevant period. Indeed, she still had Osborne's principal diagnosis listed as schizoaffective disorder, when it long since had been changed to bipolar disorder II. Moreover, in her opening brief, plaintiff cited authority indicating that a GAF rating is a medical opinion – when it comes from an acceptable medical source. (Pl. Brief, pg. 25, n. 16). A nurse, however, is not an acceptable medical source. *See* 20 C.F.R. § 404.1502.

Plaintiff also faults the ALJ for her alleged failure to provide specific reasons for her credibility determination.[10] However, the ALJ largely credited Osborne's statements concerning

---

[8] Remand for a determination of whether a claimant can maintain employment is not required where, as here during the relevant period: 1) the claimant did not assert that her condition would only periodically preclude her from working, and 2) did not offer medical evidence that her condition would intermittently prevent him from maintaining employment or functioning in the employment context. *Wise v. Barnhart*, 101 Fed. Appx. 950 (5th Cir. 2004).

[9] "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd*, 239 F.3d at 701 n2 (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)).

[10] In 2016, the Commissioner rescinded POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SSR 96-7P (S.S.A July 2, 1996), and replaced it with TITLES II & XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, SSR 16-3P (Mar. 16, 2016). In so doing, the Commissioner eliminated the use of the term "credibility" from the agency's sub-regulatory policy.

the effects of her impairments, and so stated in her decision. (Tr. 366). As recited above, Osborne and her mother's testimony generally supports the ALJ's decision. One key deviation between their testimony, and the ALJ's conclusions, concerns Osborne's alleged drowsiness caused by her medication. This allegation, however, is undermined by the consistent instances in the medical record where she reported that her medication caused no side effects. *See e.g.*, Tr. 395, 758-759, & 760. Insofar as plaintiff maintains that she did not have the ability to work on a sustained basis, any such allegation is rebutted by her daily activities, and the medical record.

In sum, the court finds that the ALJ's "credibility" determination satisfied the requirements of 20 C.F.R. § 404.1529, and is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

Finally, re-urging the same arguments employed to challenge the sufficiency of the ALJ's RFC for the relevant period, plaintiff contends that the ALJ's step eight conclusion is flawed because her hypothetical to the vocational expert faithfully incorporated the limitations found in her RFC, which according to plaintiff, is not supported by substantial evidence. However, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical(s) to the

vocational expert substantially incorporated the limitations recognized in her residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.[11]

### Conclusion

The evidence in this case was by no means uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[12] That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the

---

[11] Furthermore, the Fifth Circuit has held that a hypothetical that includes "restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the claimant]'s moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (citation omitted). Citing *Bordelon*, other courts in this circuit have held that an RFC limited to simple work reasonably incorporates a moderate or even *marked* limitation in concentration, persistence, or pace. *Reid v. Astrue*, No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011) *report and recommendation adopted,* 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Madrid v. Colvin*, No. 12-800, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013).

[12] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

decision. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).[13]

Upon review of the record, the undersigned finds that the Commissioner's determination is supported by substantial evidence and remains free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 1st day of February 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[13] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).